1

1                         UNITED STATES DISTRICT COURT
                            DISTRICT OF MASSACHUSETTS
2

3

4     UNITED STATES OF AMERICA,           )
      et al,                              )
5                          Plaintiffs,    )
                                          )
6                                         ) CA No. 03-10395-NMG
      vs.                                 ) CA No. 05-10201-NMG
7                                         )
                                          )
8     FOREST LABORATORIES, INC.,          )
      et al,                              )
9                          Defendants.

10

11    BEFORE:  THE HONORABLE NATHANIEL M. GORTON

12

13                         STATUS CONFERENCE

14

15

16          John Joseph Moakley United States Courthouse
                          Courtroom No. 4
17                        One Courthouse Way
                          Boston, MA 02210
18                    Friday, August 14, 2009
                          12:10 p.m.
19

20

21
                    Cheryl Dahlstrom, RMR, CRR
22                      Official Court Reporter
            John Joseph Moakley United States Courthouse
23                One Courthouse Way, Room 3209
                          Boston, MA 02210
24          Mechanical Steno - Transcript by Computer

25

```
 1    APPEARANCES:

 2          OFFICE OF THE UNITED STATES ATTORNEY
              By:  Gregg D. Shapiro, AUSA
 3          One Courthouse Way
            Boston, Massachusetts 02210
 4          On behalf of the United States of America.

 5          Suzanne E. Durrell, Esq.
            180 Williams Avenue
 6          Milton, Massachusetts 02186
            On behalf of Christopher R. Gobble.
 7
            BOISES, SCHILLER & FLEXNER, LLP
 8          By:  Robert A. Magnanni, Esq., and
                 Eric H. Jaso, Esq.
 9          150 John F. Kennedy Parkway
            Short Hills, New Jersey 07078
10          On behalf of Joseph Piacentile.

11          SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
            By:  Andrew B. Kanter, Esq.
12          101 Merrimac Street
            Boston, Massachusetts 02114-4737
13          - and -
            DeBEVOISE & PLIMPTON
14          By:  Christopher K. Tahbaz, Esq., and
                 Kristin D. Kiehn, Esq.
15          919 Third Avenue
            New York, New York 10022-3902
16          On behalf of Forest Laboratories, Inc.

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2      THE CLERK:  This is Civil Action 03-10395 and

3   05-10201, Forest Laboratories matters.  Will counsel please

4   identify themselves for the record.

5      MR. SHAPIRO:  Greg Shapiro for the United States, your

6   Honor.

7      THE COURT:  Good afternoon, Mr. Shapiro.  Why don't we

8   go along the front table first.

9      MR. KANTER:  Good morning, your Honor.  Andrew Kanter

12:10 10  from Sugarman, Rogers, Barshak & Cohen for Forest Laboratories.

11   With me is Chris Tahbaz and Kristin Kiehn from DeBevoise &

12   Plimpton, also counsel for Forest.  Thank you very much, your

13   Honor, for granting the motions to allow them to appear in this

14   case this morning.

15      THE COURT:  Good morning -- rather, actually, it's

16   good afternoon.  Mr. Kanter, Mr. Tahbaz -- is that how you

17   pronounce it?

18      MR. TAHBAZ:  Yes, your Honor.

19      THE COURT:  And Miss Kiehn.

12:10 20      MR. KIEHN:  Good afternoon.

21      THE COURT:  In the back we have?

22      MS. DURRELL:  Good afternoon, your Honor.  Suzanne

23   Durrell.  I represent Mr. Gobble and the '03 civil action.

24      THE COURT:  Yes, Miss Durrell, good afternoon.

25      MR. MAGNANNI:  Good afternoon, your Honor.  Bob

1    Magnanni and Eric Jaso representing Doctor Piacentile in the

2    '05 action.

3              THE COURT:  Mr. Magnanni and?

4              MR. JASO:  Mr. Jaso, your Honor, J-a-s-o, pronounced

5    Haso (phon).  I believe I was permitted pro hoc last year.

6              THE COURT:  Mr. Jaso, good afternoon to you.  And you

7    represent the intervener, Piacentile?

8              MR. MAGNANNI:  Piacentile, yes, your Honor.

9              THE COURT:  Piacentile.  I butchered that name.

12:11 10          We're here, counsel, at the behest of the Court

11    because I wanted to find out what was going on.  I understand

12    the complaints have been filed now.  There is a stipulation to

13    extend the time to respond to the complaint, which the Court

14    will allow, until September 1st.

15          But I just wanted to find out what the status of the

16    case is, where we're going from here, when we can expect

17    perhaps -- I don't know if there are going to be motions to

18    dismiss.  In any event, the Court needs to stay on top of the

19    scheduling in this case.  Perhaps Mr. Shapiro can enlighten us.

12:12 20          MR. SHAPIRO:  Yes, your Honor.  As we advised Mr.

21    Nicewicz some weeks ago by telephone, we've reached a tentative

22    settlement agreement that has not been approved either by

23    Forest or by senior officials within the government.

24          We provided a draft written agreement to Forest on

25    August 3rd, so about just under two weeks ago.  It's a lengthy

1   document.  In conjunction with that agreement, if it were to be

2   finally executed, Forest also would execute a Corporate

3   Integrity Agreement with the Department of Health and Human

4   Services.  That's an even lengthier document, I believe.  And a

5   draft of that was -- A.J. (phon) provided a draft of that to

6   Forest this Monday, August 10th.

7              I expect -- well, one further component of a final

8   settlement and dismissal of this case would be a settlement

9   agreement or agreements between Forest and the various state

12:13 10  parties.  We are not involved in that directly.  I believe that

11  once the government and Forest reach agreement on a settlement,

12  a written settlement document, that the states will use that as

13  the basis for their agreement.

14             We haven't yet received comments from Forest on our

15  draft.  They've indicated to us that they expect to do so in

16  the near future, I think in the next couple weeks.  They can

17  speak to that.  Both our agreement and the CIA, as I mentioned,

18  are lengthy agreements.  I expect they will take some time to

19  negotiate.  The government stands ready to negotiate and to

12:13 20  respond as quickly as it can to any comment that Forest has.

21             THE COURT:  All right.  Thank you, Mr. Shapiro.

22             MR. SHAPIRO:  You're welcome.

23             THE COURT:  Who's going to be speaking for Forest?

24  Mr. Tahbaz?

25             MR. TAHBAZ:  Yes, your Honor.  Thank you very much and

1    let me add my thanks for your Honor granting the pro hac

2    motions this morning.

3            We are pleased that we have reached what we would

4    describe as a settlement in principal with the federal

5    government, which includes a payment that will be allocated to

6    the state Medicaid parties as well.  We would concur with Mr.

7    Shapiro's description of the documents in play and the timing.

8            The federal settlement agreements, while it does not

9    address specifically the allocation of proceeds to the states,

12:14 10   does contain some mechanisms -- another sort of aspect of what

11   needs to be negotiated here is the mechanism for allocating the

12   monies to the specific states.  And we've started discussions

13   with NAMFCU, the National --

14           THE COURT:  How many states -- there are 22 named.

15   But I think only 11 have appeared, is that right?

16           MR. TAHBAZ:  That is our understanding as well.  But

17   our understanding of how these settlements work is that Forest

18   has agreed to pay an amount of money that will be divided

19   between the federal government and all of the state Medicaid

12:15 20   parties if they wish to settle with Forest.

21           In our preliminary discussions with the National

22   Association of Medicaid Fraud Control Units, or NAMFCU, it is

23   our understanding that they will work with us to negotiate a

24   template settlement agreement, which they will then essentially

25   go out and recommend to all of the 50 states Medicaid's

1    programs and the District of Columbia.  Even though there are

2    only 11 states plus the District of Columbia appearing in these

3    cases as interveners, our understanding is that all of the

4    states will have the opportunity to come in and participate in

5    the settlement and enter into settlement agreements with

6    Forest.

7              The one other piece of this that's contemplated in the

8    draft settlement agreement that we have from the federal

9    government that we are in the process of negotiating is the

12:16 10   attorney fees' claims of relators.

11             THE COURT:  Of the whom?

12             MR. TAHBAZ:  Of the relators, pursuant to the Qui Tam

13   Statute.

14             THE COURT:  Thank you, Mr. Tahbaz.  Do the relators

15   wish to be heard in any respect?

16             MS. DURRELL:  Thank you, your Honor.  I'll give you a

17   brief status from our point of view if that's okay.

18             We do have under the False Claims Act Statute a

19   statutory right to attorney's fees and costs, as Mr. Tahbaz

12:16 20   alluded to.  So we have provided that information to Forest and

21   are beginning discussions with them to resolve that, hopefully,

22   at the same time that the federal settlement agreement is

23   resolved.

24             My client also has a statutory claim for retaliation

25   in his employment by Forest.  We've also begun discussions with

1    Forest to, hopefully, settle that matter as well and have that

2    resolved at the same time as the federal settlement agreement.

3             THE COURT:  All right.  Thank you, Miss Durrell.

4             MS. DURRELL:  Thank you.

5             THE COURT:  Either of the other relators wish to be

6    heard?

7             MR. MAGNANNI:  I'll jump in for a second, your Honor.

8    We do not have an H claim against Forest under the False Claims

9    Act, so all we're doing is actually collecting up our fees.

12:17 10  Our case actually goes back to another matter from 2000, so

11   it's a lengthy process.  But once we have it collected, we'll

12   have discussions with Forest counsel and, hopefully, be able to

13   resolve it at the same time we settle everything else.

14            THE COURT:  Thank you, Mr. Magnanni.

15            MR. MAGNANNI:  Very good, your Honor.

16            THE COURT:  I guess, bottom line, where does that

17   leave us with respect to responsive pleadings that are due

18   September 1st?  And what is -- is there any likelihood of a

19   motion being filed jointly or individually by any party at this

12:18 20  stage?

21            MR. TAHBAZ:  Your Honor, we would suggest,

22   respectfully, that it makes sense here to give the parties an

23   additional period of time to finalize the settlement

24   documentation.  We have every expectation that the case will --

25   the settlement will become final, will be consummated.

```
  1              THE COURT:  What is the length of that time that you

  2    are requesting?

  3              MR. TAHBAZ:  We would request 90 days from September

  4    1st, which we believe will give us time to negotiate the

  5    settlement agreement, negotiate the Corporate Integrity

  6    Agreement, which is a very long and complicated agreement.

  7              THE COURT:  So we're talking the end of November?

  8              MR. TAHBAZ:  December 1st.

  9              THE COURT:  Everybody agrees with that?

12:18 10         MR. SHAPIRO:  The government doesn't oppose.  The

 11    government hopes that this could be completed sooner than that,

 12    but we don't oppose Forest's request.

 13              THE COURT:  What is the understanding with respect to

 14    the responsive pleadings?  Will they be filed on September 1st?

 15              MR. TAHBAZ:  We would ask the Court to extend the

 16    dates for filing responsive pleadings.  It seems to make no

 17    sense from our perspective to spend time working on responsive

 18    pleadings now which would take resources away from working on

 19    the settlement papers.

12:19 20         THE COURT:  I certainly understand that there is a

 21    major undertaking that you are engaged in, trying to settle a

 22    very complex series of litigation.  The time doesn't appall me,

 23    other than the fact that, as you all know, these cases being as

 24    old as they are, show up in my record as being delinquent in a

 25    way.
```

1       I understand the reasons for that, and I'm willing to

2   suffer the pangs of whatever I have to suffer in order to

3   resolve this case.  So unless the government is opposed to it

4   for some reason, I will allow a 90-day extension and expect

5   that this will be the last one, that if we are not fully

6   resolved by -- I like to use the last day of the month.  I

7   don't know what difference it makes.  We'll say November 30th.

8   It just keeps it in mind that during that month of November

9   you've got to resolve it.

12:20 10       And if we don't, then we will schedule a status

11   conference for shortly thereafter.  Let's say the first week of

12   December, at which point we will set an aggressive scheduling

13   conference, meaning responsive pleadings, and for whatever else

14   we need to do from there.

15       In fact, I think counsel should expect that on that

16   date -- let's pick out a date.  Thursday, December 3, 2009, at

17   3 p.m., we will have a status conference unless, in the

18   intervening time, I'm notified that we have a confirmed

19   settlement.

12:21 20       And at that status conference I will be expecting to

21   set out a scheduling order.  As you probably know, normally

22   when we have a scheduling conference, you have 60 days in order

23   to prepare for it.  But I want counsel to understand that

24   because of the nature of this case that it is likely -- I want

25   you to come armed with some suggestions for dates and,

1    hopefully, total agreement on what dates will be the deadlines

2    for discovery.  And it will be an aggressive scheduling order

3    at that stage, the Gobble case then being, what, seven years

4    old or nearly seven years old and the other one five.

5            Is there anything else that needs to come to my

6    attention?  Mr. Shapiro?

7            MR. SHAPIRO:  Two brief points.  One is, it may well

8    be -- in fact, it's likely that the federal government will

9    reach a settlement with Forest before the states and that will

12:22 10    become a public -- there will be a public announcement.  And

11    that dismissal may well happen before the state cases are

12    dismissed.

13            THE COURT:  By the "state cases," you mean --

14            MR. SHAPIRO:  The state parties may not dismiss their

15    claims in the same two cases while the federal government may

16    dismiss its claims.

17            THE COURT:  As of now, unless I'm mistaken, there are

18    11 states and the District of Columbia who are parties to this

19    litigation or am I wrong?

12:22 20            MR. SHAPIRO:  That's approximately correct.  I don't

21    remember how many actually filed --

22            THE COURT:  They are, as of now, parties plaintiff to

23    this case?

24            MR. SHAPIRO:  Correct.  That's one point.

25            The other is regarding your record.  This is something

1    that I haven't heard of done here, by other districts,

2    including the Eastern District of Philadelphia, which also has

3    a lot of Qui Tam cases.

4              THE COURT:  Where?

5              MR. SHAPIRO:  I'm sorry.  Pennsylvania, in

6    Philadelphia.

7              The judges there have expressed similar concerns.  And

8    some of them, I understand, employ a suspense docket and

9    put these cases on a suspense docket.

12:23 10          THE COURT:  Administratively closing the case.  We've

11   talked about that.

12             MR. SHAPIRO:  If it's something you'd like to explore,

13   we're willing to explore it.

14             THE COURT:  Thank you.  I'll look into that.  I think

15   it's unlikely in this district that we'll employ that ruse, if

16   you will.

17             So is there anything else that counsel need to have my

18   attention for at this stage when we're all gathered here?

19             If not, then I encourage you and applaud your efforts

12:23 20  for working hard and diligently at resolving it.  And I fully

21   expect that on or before November 30th I will hear that there

22   is a resolution of this matter to the extent that the parties

23   here can make it happen.

24             So we're adjourned.  Thank you.

25   (Whereupon, at 12:24 p.m. the hearing concluded.)

13

1                    C E R T I F I C A T E

2

3

4          I certify that the foregoing is a correct transcript

5     of the record of proceedings in the above-entitled matter to

6     the best of my skill and ability.

7

8

9

10

11

12    /s/Cheryl Dahlstrom                    08/19/2009

13    Cheryl Dahlstrom, RMR, CRR             Dated

14    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25