```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3
      UNITED STATES OF AMERICA,          )
 4    et al,                             )
                         Plaintiffs,     )
 5                                       )
                                         ) CA No. 03-10395-NMG
 6    vs.                                ) CA No. 05-10201-NMG
                                         )
 7                                       )
      FOREST LABORATORIES, INC.,         )
 8    et al                              )
                         Defendants.     )
 9

10

11    BEFORE:   THE HONORABLE NATHANIEL M. GORTON

12

13                       STATUS CONFERENCE

14

15

16         John Joseph Moakley United States Courthouse
                          Courtroom No. 4
17                        One Courthouse Way
                          Boston, MA 02210
18                   Monday, December 21, 2009
                            11:18 a.m.
19

20
                     Cheryl Dahlstrom, RMR, CRR
21                      Official Court Reporter
           John Joseph Moakley United States Courthouse
22                 One Courthouse Way, Room 3209
                          Boston, MA 02210
23          Mechanical Steno - Transcript by Computer

24

25
```

```
 1   APPEARANCES:

 2        OFFICE OF THE UNITED STATES ATTORNEY
          By:  Gregg D. Shapiro, Esq.
 3        One Courthouse Way
          Boston, Massachusetts 02210
 4        On behalf of the United States.

 5        Suzanne E. Durrell, Esq., and
          Robert Thomas, Esq.
 6        180 Williams Avenue
          Milton, Massachusetts 02186
 7        On behalf of Christopher R. Gobble.

 8        BOISES, SCHILLER & FLEXNER, LLP
          By:  Robert A. Magnanini, Esq.
 9        150 John F. Kennedy Parkway
          Short Hills, New Jersey 07078
10        On behalf of Joseph Piacentile.

11        SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
          By:  William F. Benson, Esq.
12        101 Merrimac Street
          Boston, Massachusetts 02114-4737
13        - and -
          DeBEVOISE & PLIMPTON
14        By:  Christopher K. Tahbaz, Esq., and
               Pamela Franklin Sohn, Esq.
15        919 Third Avenue
          New York, New York 10022-3902
16        On behalf of Forest Laboratories, Inc.

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  This is Civil Action 03-10395 and
 3    05-10201, the Forest Lab matters.  Will counsel please identify
 4    themselves for the record.
 5              MR. SHAPIRO:  Gregg Shapiro for the United States.
 6              THE COURT:  Mr. Shapiro, good morning.
 7              MR. TAHBAZ:  Your Honor, good morning.  Christopher
 8    Tahbaz, from Debevoise & Plimpton, for the Forest defendants.
 9              THE COURT:  Mr. Tahbaz, good morning to you.
11:19  10       MS. FRANKLIN SOHN:  Good morning.  Pamela Franklin
 11   Sohn, Debevoise & Plimpton, for the Forest defendant.
 12             THE COURT:  Stone?
 13             MS. SOHN:  Sohn, S-O-H-N.
 14             THE COURT:  Miss Sohn, good morning to you.
 15             MR. BENSON:  Good morning, your Honor.  Bill Benson,
 16   from Sugarman, Rogers, for the defendants.
 17             THE COURT:  Mr. Benson.
 18             MS. DURRELL:  Good morning, your Honor.  Suzanne
 19   Durrell for Mr. Gobble.  With me is my colleague, Bob Thomas.
11:20  20       THE COURT:  Miss Durrell, Mr. Thomas.
 21             MR. THOMAS:  Good morning, your Honor.
 22             MR. MAGNANINI:  Your Honor, Bob Magnanini, from the
 23   firm of Stone & Magnanini, for Relator Doctor Piacentile.
 24             THE COURT:  Good morning to you, Mr. Magnanini.
 25             We last were together when you appeared, along with
```

1    the plaintiffs in the MDL case, about a month ago, and you were
2    excused from the second part of that conference, and we went
3    forward with the -- with some planning in the MDL case.  But it
4    was -- you did advise me that you were in the process of
5    working out the grand settlement of the Qui Tam case with some
6    certain problems that needed to be addressed.
7         Why don't you update me, Mr. Shapiro, on where we are
8    now, and then I'll ask if other counsel would like to address
9    the Court.
11:21 10    MR. SHAPIRO:  It's a complex settlement that does not
11    just involve the Civil Division of the Department of Justice
12    and Forest and the Relator.  There are other government
13    entities involved.  And I think, with respect to the Civil
14    Division and Forest, we could finish this right now.  There are
15    a few words missing, things that we have not taken the time to
16    finish largely because these other issues are hanging out
17    there.
18         But I think it might be best if Forest updated you on
19    those issues perhaps in camera, but I'll let Forest --
11:21 20    THE COURT:  Well, I understand that you do want to see
21    the Court at some stage, just the government and Forest
22    representatives.  But why don't we try to resolve those matters
23    that can be resolved in open court with the relator here, and
24    then we'll go into an in-camera session.
25         Mr. Tahbaz, do you want to follow up on that?

1        MR. TAHBAZ: Thank you, your Honor. With regard to
2   the settlement of the Qui Tam actions, the actions brought by
3   relators on behalf of the United States, I do not believe there
4   are any issues outstanding with regard to the relators other
5   than we are trying to see if we can resolve their claim for
6   attorneys' fees under the False Claims Act statute.
7        And we have come some way with -- there are three
8   different sets of relators' counsel that we are working with,
9   and we have made more progress with some than others. But,
11:22 10 again, we have no reason to believe that those discussions
11  won't ultimately be successful, and, as Mr. Shapiro said, I
12  think, having taken the time to push those to the conclusions
13  because of the other -- some of the issues that are holding up
14  the consummate settlement.
15       THE COURT: What about the states' attorneys general
16  claim?
17       MR. TAHBAZ: We're essentially in the same position
18  with the NAMFCU representatives.
19       THE COURT: I'm not familiar with NAMFCU.
11:23 20 MR. TAHBAZ: The National Association of Medicaid
21  Fraud Control Units, or NAMFCU. This is the association of
22  state attorneys generals' offices that negotiate on behalf of
23  all the states who participate in settlements like this.
24       THE COURT: Okay.
25       MR. TAHBAZ: We have been discussing a draft template

```
 1    settlement agreement with them.  We have largely concluded
 2    those discussions.
 3             THE COURT:  So timing-wise, but for these attorneys'
 4    fees issues, what are we looking at in terms of a resolution of
 5    the Qui Tam cases?
 6             MR. TAHBAZ:  Well, there's -- the other major
 7    participant in the discussions are the OIG, the Office of the
 8    Inspector General, of HHS.  Those discussions have slowed down
 9    somewhat.  They're still ongoing, but we are unable to conclude
10    the resolution of the Qui Tam cases until we have resolved our
11    discussions with the OIG.
12             It is hard to say when those discussions are going to
13    end.  I would like to think they would end relatively soon.  I
14    can't say that now based on where we are.  I can tell you they
15    are active discussions in which I believe Forest and the
16    government are negotiating in good faith.  I wish I had a more
17    definitive answer as to when those discussions are going to
18    wrap up.
19             And the reason we asked for the -- for -- today, for a
20    discussion in camera is, if the Court wants to hear more about
21    what the issues are, we would be happy to brief the Court.
22             THE COURT:  All right.  Do any of the relators wish to
23    be heard at this stage?  Ms. Durrell?
24             MS. DURRELL:  Your Honor, the only thing we would wish
25    to be heard on is with respect to Mr. Gobble's retaliation
```

```
 1          claims, his personal claims, which are separate from the Qui
 2          Tam.
 3                    We had filed, along with Forest, a joint statement
 4          with the court last week.  If this is the appropriate time, we
 5          would also be interested in just addressing what the schedule
 6          would be for that piece of the case.
 7                    THE COURT:  In other words, it is the intent of Mr.
 8          Gobble, your client, to go forward with his individual claims
 9          for retaliation against his former employer?
11:25 10              MS. DURRELL:  Yes.  We have not been able to resolve
 11         them.  I think I mentioned in court last time, we would like
 12         the option to go to mediation at an early stage here, but that
 13         is not something that Forest wishes to do at this time.
 14                   THE COURT:  Well, my -- we can certainly try to work
 15         out a scheduling order.  Have you met with opposing counsel in
 16         that regard?
 17                   MS. DURRELL:  Yes.  We met and conferred, and we did
 18         file with the court last week a Rule 16.1 --
 19                   THE COURT:  Okay.
11:26 20              MS. DURRELL:  -- joint statement.
 21                   THE COURT:  I haven't had a chance to look at it, but
 22         perhaps you could state it on the record, and we could make it
 23         into a scheduling order so long as both sides are in agreement.
 24         I'm not going to have a problem with it unless it's way out of
 25         the standard time length for getting such a case ready,
```

1 understanding that this case is six or seven years old. I
2 realize that you haven't been concentrating on the retaliation
3 claim for six or seven years, but be that as it may, I want to
4 resolve this as soon as possible.
5 So why don't you state or Mr. Tahbaz can state -- what
6 do you want to say, Mr. Tahbaz?
7 MR. TAHBAZ: If Miss Durrell wouldn't mind, we
8 actually have an extra copy. Perhaps we could hand that up.
9 MS. DURRELL: Go ahead.
11:27 10 THE COURT: That would be fine.
11 Apparently, I have it in my papers that I haven't
12 looked at. Okay. I've got it right here at my beck and call.
13 So as I see it, with just a quick reading, you want to
14 file an amended claim by early next month; responsive pleadings
15 in February; reply brief in March; oral argument -- we may or
16 may not have oral argument on those dispositive motions. Then
17 if the case survives, all fact discovery by July 30th of 2010.
18 So it looks like this case goes on a little over
19 another year, according to your scheduling order, draft
11:28 20 scheduling order. I don't see any provision for what happens
21 after dispositive motions a year from now -- actually, a little
22 over a year from now. If the case survives that -- let's see.
23 Pretrial conferences as necessary.
24 Well, I suppose -- this looks like it's longer than I
25 would have thought necessary. Why do we need a little over a

1  year to get the matter ready for trial, in your opinion, Miss
2  Durrell?
3       MS. DURRELL: Well, I think both parties, you know,
4  are anxious to get it ready for trial, but I think we were also
5  trying to recognize the fact that there may be a number of
6  depositions that will need to be conducted. There presumably
7  will be experts needed as well, for example, on the damages
8  issues. And we were just trying to be cognizant of the fact
9  that that does take a little bit of time to prepare.
11:29 10      We were -- at least my client, we were at least hoping
11  that if Forest is not amenable to mediation at this point that
12  perhaps there might be some point here within this schedule
13  where there would be a juncture that would be appropriate for
14  mediation.
15      THE COURT: Well, we usually schedule them, you know,
16  in the middle at some stage, after most of your nonexpert
17  discovery but before expert discovery and dispositive motions
18  and so on. We can build that in.
19      Is it really going to be -- is it going to take six
11:30 20  months to do the fact discovery in this case, you think?
21      MS. DURRELL: I think it depends, in part, your Honor,
22  how long document production takes. We don't, for example,
23  have initial disclosures yet.
24      THE COURT: Those are to be by what?
25      MS. DURRELL: By January 19th. We could certainly do

1   it sooner than that, speaking from my client's point of view.

2         THE COURT:  Okay.  I'm going to make just a few

3   amendments to this order.  Fact discovery to be completed by

4   June 30th rather than July 30th; expert designations by July

5   31st rather than August -- at the end of August.  We'll move up

6   depositions of identified experts till September 30th.  Expert

7   discovery will be completed by October 15th.  Rebuttal experts

8   will be designated by September 15th.  And all expert

9   discovery, by October 15th, will be completed.

11:31 10         Then summary judgment to be filed by November 15th;

11   opposition, 30 days thereafter.  No reply memoranda on summary

12   judgment.  I have enough to decide.  And if you think that it's

13   necessary, you'll have to get leave of court.

14         So that means we're ready for trial sometime no later

15   than January, 2011.  We'll make a -- actually, we'll have a

16   pretrial conference early January and trial later in January of

17   2011.  Thursday, January 13, 2011, for pretrial conference and

18   trial, the 24th, Monday, the 24th.  Any problem with those

19   dates, counsel?

11:32 20         MS. DURRELL:  The only -- I may have lost track.  But

21   I think at some point you may have said September 30th with

22   respect to certain of the expert matters, and I'm wondering if

23   you meant August.

24         THE COURT:  Which one?

25         MS. DURRELL:  The depositions.

1	THE COURT: I was moving everything up 30 days.
2	MS. DURRELL: I think the disclosures got moved up 30
3	days, to July 31st. But then I think, on the depositions, I
4	think you said September 30th when I think you meant August
5	30th. Would that be right?
6	THE COURT: All right. Yes. Depositions of
7	identified experts, if any, shall be completed no later than
8	August 31st. Okay?
9	MS. DURRELL: Thank you.
11:33 10	THE COURT: Are we all on the same page so far? Mr.
11	Tahbaz?
12	MR. TAHBAZ: Yes, your Honor. Those dates are fine.
13	THE COURT: The only other thing we'll build into the
14	scheduling order is a reconsideration of mediation sometime
15	next summer, let's say July, which normally is the time when
16	mediation is most effective, after you've had your -- pretty
17	much most of your fact discovery but before you've gotten into
18	the rest of it.
19	Does it make sense to schedule it now, Mr. Tahbaz, or
11:34 20	do you not think it's appropriate?
21	MR. TAHBAZ: I don't think it's appropriate, but I
22	would certainly be willing to say now that we would be happy to
23	reconsider at the time --
24	THE COURT: On June 15th, counsel will submit to the
25	court a status report on the subject of mediation, whether or

```
 1    not counsel believe that it might be helpful.  If it's a
 2    unanimous opinion that it will be, we will schedule it for July
 3    of 2010.  If not, I'm not going to make people go to mediation
 4    who feel it's not going to be productive because it won't
 5    resolve the case.
 6              I sincerely commend it to your collective
 7    consideration because it is effective more than 50 percent of
 8    the time in this district.  So you can save your clients some
 9    money.  By the way, if you choose to go private mediation,
10    that's fine, too.  Just tell us and we'll be glad to have you
11    do that.  Otherwise, we'll assign you to one of the magistrate
12    judges, all of whom are very effective at helping mediate
13    cases, next summer.  Okay?
14              MS. DURRELL:  Thank you, your Honor.
15              MR. TAHBAZ:  Thank you, your Honor.
16              THE COURT:  That, then, I think, resolves the issue of
17    the remaining case.
18              Now I think it might be appropriate for the relators
19    to withdraw and allow me to hear in camera, if you will, or
20    however it's properly designated, the problems that need to be
21    resolved outside the relators' consideration.  Thank you,
22    counsel.
23              MS. DURRELL:  Thank you very much.
24              MR. MAGNANINI:  Thank you, your Honor.
25    (Counsel was excused.)
```

1        C E R T I F I C A T E
2
3
4        I certify that the foregoing is a correct transcript
5   of the record of proceedings in the above-entitled matter to
6   the best of my skill and ability.
7
8
9
10
11
12  /s/Cheryl Dahlstrom            12/30/2009
13  Cheryl Dahlstrom, RMR, CRR     Dated
14  Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25